FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 13, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEREMY MULLINS,<br><br>          Plaintiff,<br><br>   vs.<br><br>COMMISSIONER OF SOCIAL<br><br>SECURITY,<br><br>          Defendant. | No. 1:16-cv-03181-FVS<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 14, 18 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 14, 18. This matter was submitted for consideration without oral argument. Plaintiff was represented by attorney D. James Tree. Defendant was represented by Special Assistant United States Attorney Justin L. Martin. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 14, is denied and Defendant's Motion, ECF No. 18, is granted.

**JURISDICTION**

Plaintiff Jeremy Mullins filed for disability insurance benefits ("DIB") on April 30, 2013, and for supplemental security income ("SSI") on May 8, 2013.  Tr. 196, 204, 230.  Plaintiff alleged an onset date of February 28, 2013.  Tr. 196, 204.  Benefits were denied initially (Tr. 130-38) and upon reconsideration (Tr. 144-47).  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on November 17, 2014.  Tr. 43-73.  On April 14, 2015, the ALJ denied Plaintiff's claim (Tr. 22-34), and the Appeals Council denied review.  Tr. 1.  The matter is now before this court pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Jeremy Mullins ("Plaintiff") was 33 years old at the time of the hearing.  Tr. 47.  He has a GED and a two-year technical school degree in instrumentation.  Tr. 47.  He testified he left his last job in 2013 because he was fired for voicing safety concerns.  Tr. 48.  Plaintiff testified he can no longer work because he has issues with his bowels.  Tr. 50, 63.  He also has issues with his legs and arms such that they are unable to function sometimes.  Tr. 50-51.  He testified he cannot take care of himself at home alone because of his limb problems or problems with his brain

function.  Tr. 51.  He has a lot of pain.  Tr. 58.  His legs always hurt, sometimes so badly the pain is unbearable.  Tr. 58.  Weekly migraines limit his ability to go outside, move around, and interact with his children.  Tr. 58.  He is nauseous and vomits every morning.  Tr. 58.  He estimated he vomits 15 times per day on average.  Tr. 60.  Mentally, Plaintiff testified he has difficulty comprehending instructions and his mind wanders.  Tr. 51, 64.  He would like to go back to work if he felt better.  Tr. 65.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed. *Shinseki v.

Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's

impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 28, 2103, the alleged onset date. Tr. 24. At step two, the ALJ found Plaintiff has the following severe impairments: bipolar disorder, alcohol dependence, and cannabis abuse. Tr. 24. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or

medically equals the severity of a listed impairment.  Tr. 26.  The ALJ then found:

"[T]he claimant has the residual functional capacity to perform a full range of work

at all exertional levels but with the following nonexertional limitations:  the

claimant should avoid concentrated exposure to hazards.  He can have occasional,

superficial interaction with the general public and coworkers."  Tr. 27.

At step four, the ALJ found Plaintiff is unable to perform any past relevant

work.  Tr. 32.  After considering the testimony of a vocational expert and

Plaintiff's age, education, work experience, and residual functional capacity, the

ALJ there are other jobs that exist in significant numbers in the national economy

that Plaintiff can perform.  Tr. 33.  Therefore, at step five, the ALJ concluded that

Plaintiff has not been under a disability, as defined in the Social Security Act, from

February 28, 2013, through the date of the decision.  Tr. 34.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

disability benefits under Title II and supplemental security income benefits under

Title XVI of the Social Security Act.  ECF No. 14.  Plaintiff raises the following

issues for review:

1. Whether the ALJ improperly rejected medical opinion evidence;

2. Whether the ALJ failed to identify all of Plaintiff's severe impairments at

   step two;

3. Whether the ALJ improperly rejected Plaintiff's symptom testimony; and

4. Whether the ALJ improperly rejected the lay witness statement.

ECF No. 14 at 6-20.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ improperly rejected the medical opinions of Norman Staley, M.D.; Christopher Clark, M.Ed; and Deborah Blaine, M.S. ECF No. 14 at 6-10.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927 (2012); [1] *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).

---

[1] Some of the regulations cited in this decision were revised effective in March 2017. E.g., Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 15132 (March 27, 2017) (revising 20 C.F.R. § 404.1527). Since the revisions were not effective at the time of the ALJ's decision, they do not apply to

"Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

### 1. Norman Staley, M.D.

Norman Staley, M.D., reviewed the record and completed a residual functional capacity assessment in February 2014. Tr. 107-08. Dr. Staley found multiple sclerosis ("MS") is a severe impairment. Tr. 107. He assessed functional limitations generally consistent with light work, but limited Plaintiff to occasional climbing of ladders, ropes, or scaffolds, and opined that Plaintiff should avoid

---

this case. For revised regulations, the version effective at the time of the ALJ's decision is noted.

concentrated exposure to extreme heat, vibration, and hazards. Tr. 107-08. Dr.

Staley's written narrative explained: "32 year old with recent alcohol cessation but

date unreliable with CT brain some demyelation and small defect thoracic cord

with minimal documented neuro finding on neurologist exam on 2/15/13. At this

time with evidence in file should be capable this RFC." Tr. 108. The ALJ gave

little weight to Dr. Staley's opinion. Tr. 26.

First, the ALJ the found the record reviewed by Dr. Staley contains no

diagnosis of MS, which has a very specific diagnostic criteria. Tr. 26. Plaintiff

contends that, as an acceptable medical source, Dr. Staley is capable of making a

diagnosis based on a review of the record. ECF No. 14 at 7. However, even if a

nonexamining physician can theoretically make a diagnosis as complex as MS

based on the record, for the reasons discussed below, the ALJ reasonably

questioned the MS diagnosis made by Dr. Staley.

Second, the ALJ noted that the MRI referenced by Dr. Staley[2] lists a number

of differential diagnoses which do not constitute medically determinable

_____

[2] Dr. Staley's narrative mentions a "CT" of the brain. Tr. 108. The record contains

both an MRI of the head and a CT of the head and brain. Tr. 358, 406. Notably,

the June 2013 CT of the head and brain indicated no evidence of acute intracranial

impairments.  Tr. 26.  The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).  A March 2013 MRI of Plaintiff's brain showed stable appearance of some signal lesions first noted in March 2011.  Tr. 358.  The MRI noted differential diagnoses including demyelinating process such as MS or ADEM (acute demyelinating encephalomyelitis), sequela of previous infection, vasculitis, or migraines.  Tr. 358.  Plaintiff cites other evidence in the record in support of his allegations,[3] but

_____

pathology, although Plaintiff had evidently suffered a fractured nose.  Tr. 406-07.  Presumably, Dr. Staley intended to reference the March 2013 brain MRI.  Tr. 358.

[3] Plaintiff cites a 2013 MRI of Plaintiff's cervical and thoracic spine and asserts, "The evidence in the record still sufficiently showed the disorder and damage in the central nervous system."  ECF No. 14 at 7 (citing Tr. 356).  However, the findings of the spinal MRI indicate, "[n]o evidence of focal spinal cord lesion to suggest involvement by demyeliminating disease," and "[m]ild diminished caliber of the thoracic spinal cord from T3-T6 without corresponding spinal cord lesion.  Findings are nonspecific and of uncertain clinical significance."  Tr. 356.  The MRI report actually seems less suggestive of a demyeliminating disease such as MS rather than more suggestive as Plaintiff indicates.  Tr. 356.  Regardless,

Dr. Staley did not mention any findings other than the 2013 brain MRI (and "minimal" neurological findings) as the basis for his diagnosis. Since the MRI was not conclusive and listed a number of possible diagnoses,[4] it was reasonable for the ALJ to question Dr. Staley's conclusion. This is a legitimate reason for giving little weight to the opinion.

Third, the ALJ gave little weight to Dr. Staley's opinion because Dr. Staley did not discuss the evidence in his assessment. Tr. 26. An ALJ may discredit physician opinions that are conclusory, brief, and unsupported by the record as a

_____

"nonspecific" findings of "uncertain clinical significance" do not lend greater support to one particular diagnosis of the five differential diagnoses listed on the brain MRI.

[4] The Court notes the February 2013 neurological notes from Dr. Longfellow and Dr. Oakes also reference a number of possible diagnoses, including underlying hereditary neuropathy, myeloneuropathy, seizures, mitochondrial encephalopathy lactic acidosis (MELAS) and stroke-like episodes, or cerebral autosomal dominant arteriopathy with subcortical infarcts and leukoencphalopathy (CADASIL). Dr. Longfellow ordered bloodwork and the MRIs of the brain and spine and noted that further follow up testing might be considered such as lumbar puncture or visual evoked potentials. Tr. 349.

whole or by objective medical findings.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Plaintiff contends the ALJ was incorrect and that Dr. Staley provided an explanation "concerning evidence of brain demyelination and a defect in his thoracic cord, with documented neurological findings."  ECF No. 14 at 8 (citing Tr. 108).  Actually, the substantive explanation for Dr. Staley's findings is this portion of his statement: "CT brain some demyelation and small defect thoracic cord with minimal documented neuro finding on neurologist exam."  Tr. 108.  With no further discussion of the basis for the MS diagnosis when both the MRI report and the neurologist report note differential diagnoses, the ALJ reasonably found Dr. Staley's opinion lacked explanation.  This is a legally sufficient reason for rejecting Dr. Staley's opinion.  Based on the foregoing, the ALJ reasonably gave little weight to Dr. Staley's opinion.

> 2.  *Chris Clark, M.Ed., and Deborah Blaine, M.S.*

Chris Clark, M.Ed., and Deborah Blaine, M.S., completed a mental health initial assessment in November 2013.  Tr. 436-40.  They noted Plaintiff had unstable mood function and tended to be impulsive.  Tr. 438.  Based on his self-report, they indicated Plaintiff has difficulty paying attention and processing information and he intimidates others.  Tr. 438.  Mr. Clark and Ms. Blaine diagnosed bipolar disorder and alcohol dependence and opined that he was

significantly impaired in social and occupational function based upon his mental, emotional, and physical problems. Tr. 438. They noted a current Global Assessment of Functioning (GAF) score of 44 with a high score of 60 in the past year. Tr. 439.

The ALJ cited the assessments of three other mental health providers and gave no weight to the GAF scores of 45[5] they assessed. Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient. The scale does not evaluate impairments caused by psychological or environmental factors. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 (9th Cir. 1999).[6] The ALJ rejected the GAF scores of 45 because there are no narrative explanations or

_____

[5] A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupation, or school functioning. American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 32 (4th Ed. 2000).

[6] The Commissioner has explicitly disavowed use of GAF scores as indicators of disability. "The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listing." 65 Fed. Reg. 50746-01, 50765 (August 21, 2000). Moreover, the GAF scale is no longer included in the DSM–V. American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (5th Ed. 2013).

objective support and the scores are inconsistent with the unremarkable mental status examination findings documented throughout the record, particularly the findings of Dr. Toews, an examining psychologist (discussed *infra*) who found no indication of cognitive, mood or affective barriers to employability. Tr. 32, 428. The ALJ also found the GAF scores are inconsistent with Plaintiff's daily activities. Tr. 32. Plaintiff does not challenge the rejection of these findings, and the Court concludes the ALJ's reasons are germane to the providers and supported by substantial evidence. Although the ALJ rejected the GAF scores assessed by other mental health providers for these reasons, the ALJ did not reference the assessment completed by Mr. Clark and Ms. Blaine or otherwise specifically reject their conclusions. Tr. 32.

Plaintiff contends the ALJ "entirely failed" to discuss the joint opinion of Mr. Clark and Ms. Blaine and asserts "another reasonable ALJ might have reached a different disability decision when fully crediting their opinion." ECF No. 14 at 10. The Court disagrees. First, the ALJ did not completely fail to discuss the findings of Ms. Clark and Ms. Blaine, as the ALJ noted the initial assessment performed at Comprehensive Mental Health in November 2013. Tr. 29. Second, the ALJ provided legally sufficient reasons for rejecting similar GAF scores assessed by similar providers. It is not rational to conclude the ALJ intended to credit the GAF score assessed by Mr. Clark and Ms. Blaine while rejecting other

similar GAF assessments by other similar providers. The Court infers the same reasons apply to the GAF score assessed by Mr. Clark and Ms. Blaine. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (finding the court may make reasonable inferences from the ALJ's discussion of the evidence).

Lastly, although Plaintiff asserts another ALJ "might have reached a different disability decision when fully crediting their opinion," and even if the ALJ erred by failing to specifically reject the assessment of Mr. Clark and Ms. Blaine, Plaintiff does not identify how the RFC or any other essential finding would be changed if the assessment was credited. ECF No. 14 at 10. Where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, the error is harmless if the reviewing court can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Indeed, in light of Dr. Toews' finding of no mental health limitations and other evidence cited by the ALJ and discussed throughout this decision, the Court concludes that no reasonable ALJ would have reached a different decision even if the assessment completed by Mr. Clark and Ms. Blaine were credited. Thus, the error, if any, was harmless.

**B.     Medically Determinable Impairments**

Plaintiff contends the ALJ erred by failing to identify multiple sclerosis and spine disorders as medically determinable and severe impairments. ECF No. 14 at 13-17. At step two, a claimant must establish that he or she suffers from a medically determinable impairment. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004–1005 (9th Cir. 2005). The claimant must prove the existence physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908 (1991). "Under no circumstances may the existence of an impairment be established on the basis of symptoms alone." S.S.R. 96-4p. Further, "regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities, i.e., medical signs and laboratory findings." *Id.* Thus, objective evidence must be present to establish a medically determinable impairment.

The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See e.g. Edlund*, 253 F.3d at 1159-60; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). If a

claimant establishes a medically determinable impairment, the ALJ must determine whether Plaintiff suffers from a "severe" impairment, i.e., one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). The claimant has the burden of proving that "these impairments or their symptoms affect his ability to perform basic work activities." *Edlund*, 253 F.3d at 1159–1160.

1. *Multiple Sclerosis*

The ALJ found the record does not support the existence of multiple sclerosis (MS) as a medically determinable impairment. Tr. 24-26. The ALJ discussed Plaintiff's allegations of MS symptoms and results of a February 13 neurology examination at the University of Washington. Tr. 24-25. At that time, Plaintiff denied problems with urinary or bowel incontinence but reported his gait was unstable. Tr. 25, 347. On exam, Plaintiff had a normal gait and full strength throughout, although he had some decreased vibratory sensation in the feet and mild postural tremor. Tr. 25, 348. A nerve conduction study and EEG were normal in March 2013. Tr. 25, 341, 344. An MRI of the brain the same month showed stable appearance of some signal lesions first noted in March 2011. Tr. 25, 358. The MRI noted differential diagnoses including demyelinating process such as MS or ADEM (acute demyelinating encephalomyelitis), sequela of previous infection, vasculitis, or migraines. Tr. 358. An MRI of the cervical and thoracic

spine showed no evidence of focal spinal cord lesion to suggest involvement by demyelinating disease. Tr. 356. The ALJ noted that Plaintiff was incarcerated in June 2013, but jail medical records do not document any of the symptoms alleged. Tr. 25, 371-422. During a psychological exam in September 2013, Plaintiff told Dr. Toews that he "may have MS" but that testing had been "inconclusive." Tr. 25, 423-24.

The ALJ also noted other "unremarkable" findings. Tr. 25. In October 2013, Plaintiff told a provider that he had a "recent diagnosis" of MS from the University of Washington, but he had not seen any other provider since that time due to a lack of medical coverage. Tr. 25, 464. He complained that he had been having headaches for three weeks since he had stopped drinking alcohol. Tr. 25, 465. The physical exam was unremarkable with no motor weakness and intact balance, gait, and coordination. Tr. 25, 467. Later in October, Plaintiff visited the emergency room for a headache. Tr. 25, 478. The cerebral CT scan showed no brain abnormality. Tr. 25, 483. On exam, neurological signs were all normal and Plaintiff had full strength, normal sensation, and normal gait with no difficulties ambulating. Tr. 25, 479. Upon following up with a treating provider, Plaintiff reported the headache had not recurred and the physical exam findings were unremarkable. Tr. 26, 20-646.

Accordingly, the ALJ concluded the record failed to support MS as a medically determinable impairment. The ALJ determined any findings in brain imaging have been nonspecific and differential diagnoses have been considered with no definitive diagnosis. Tr. 26. The ALJ noted exam findings have been largely unremarkable and the records do not corroborate the symptoms alleged. Tr. 26. The ALJ also observed that even after Plaintiff's medical insurance was reinstated, the record reflects no additional treatment. Tr. 26. As a result, the ALJ concluded the medical evidence does not contain objective findings to support the existence of MS. Tr. 26. This is a reasonable interpretation of the evidence.

Plaintiff contends MS is established in the record, reciting reported symptoms and restating the assertion that the 2013 brain MRI (listing five differential diagnoses) establishes MS. ECF No. 14 at 13-15. Plaintiff also relies on the MS diagnosis made by Dr. Staley. ECF No. 14 at 15. However, as discussed *supra*, his opinion was reasonably rejected by the ALJ. Based on the foregoing, the Court concludes substantial evidence supports the ALJ's step two finding regarding MS.

### 2.  *Spinal Impairment*

The ALJ found the record does not establish any medically determinable spinal impairment. Tr. 26. The ALJ noted Plaintiff did not testify regarding any disabling spinal impairment. Tr. 26. Additionally, the only evidence of treatment

for back pain in the record are chiropractic records from 2012, which the ALJ noted were generated before the alleged onset date.  Tr. 26, 324-37.  The chiropractic records indicated "some minimal chiropractic care for reports of back pain," and the chiropractor assessed scoliosis and disc degeneration.  Tr. 328-32. Nonetheless, the ALJ observed a chiropractor is not an acceptable medical source, and the opinion of an acceptable medical source is required to establish the existence of a medically determinable impairment.  S.S.R. 06-3p.  Thus, the ALJ concluded Plaintiff does not have a medically determinable spinal impairment.

Plaintiff contends the ALJ's assessment is inaccurate based on a CT scan of Plaintiff's abdomen and pelvis.  ECF No. 14 at 13.  The radiologist, Dr. Feldmann, noted mild degenerative disc disease at L5-S1, with disc space narrowing and vertebral osteophyte formation, and slight retrolisthesis of L5 on S1.  Tr. 401. Plaintiff asserts this is "sufficient objective evidence of a physical impairment with a diagnosis from an acceptable medical source, and the ALJ erred in finding otherwise."  ECF No. 14 at 13.  However, while Plaintiff is correct that Dr. Feldmann is an acceptable medical source, the portion of the radiology report cited by Plaintiff is the findings, not the "assessment" or diagnostic portion of the report. Tr. 401-02.  In the assessment portion of the report, Dr. Feldmann noted only "there is mild destroscoliosis of the mid and lower thoracic spine."  Tr. 402.

Furthermore, even if Dr. Feldmann's report constitutes a diagnosis of a spinal impairment, it would not mean Plaintiff's back impairment was severe or disabling, *see Edlund*, 253 F.3d at 1159-60, and any error would be harmless.[7] Plaintiff has identified no evidence of any functional limitations resulting from a spinal impairment, and the Court finds none in the record, so there is no reasonable basis to conclude that any spinal impairment that may have been medically determinable would be a severe impairment "which significantly limits [Plaintiff's] physical or mental ability to do basic work activities" or otherwise impacts the residual functional capacity finding. 20 C.F.R. §§ 404.1520(c), 416.920(c). Thus, the ALJ's step two finding is supported by substantial evidence.

## C.     Plaintiff's Symptom Testimony

Plaintiff contends the ALJ improperly rejected his testimony. ECF No. 16 at 15-17. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying

_____

[7] As long as there is substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination, the error is harmless. *See Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout*, 454 F.3d at 1055; *Batson*, 359 F.3d at 1195-97.

impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible. Tr. 28.

First, the ALJ found the record contains minimal medical evidence, and the evidence that exists fails to document findings that would support debilitating symptoms and limitations. Tr. 28. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair,* 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20

C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (2011); *see also* S.S.R. 96-7p.[8]  Minimal

objective evidence is a factor which may be relied upon in discrediting a claimant's

testimony, although it may not be the only factor.  *See Burch v. Barnhart*, 400 F.3d

676, 680 (9th Cir. 2005).

With regard to Plaintiff's mental health complaints, the ALJ discussed the

mental health evidence in detail.  Tr. 28-30.  In particular, the ALJ noted the findings

of Dr. Toews, an examining psychologist who made a provisional diagnosis of

adjustment disorder with mild anxiety and depressed mood, and diagnosed cannabis

abuse by self-report.  Tr. 29, 428.  Dr. Toews opined there was no indication of

cognitive, mood or affective barriers to employability, and the ALJ gave great

weight to Dr. Toews' findings.  Tr. 31, 428.  The ALJ also considered the mental

health treatment record, noting largely unremarkable findings.  Tr. 29-30.  The ALJ

concluded the record is devoid of findings supporting Plaintiff's alleged problems

with memory and cognitive functioning, and Plaintiff demonstrated capacity for

appropriate social interactions throughout the record.  Tr. 30.  The ALJ reasonably

---

[8] S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016.  The new

ruling also provides that the consistency of a claimant's statements with objective

medical evidence and other evidence is a factor in evaluating a claimant's

symptoms.  S.S.R. 16-3p at *6.

determined these factors undermine Plaintiff's testimony regarding his mental health symptoms.

With regard to Plaintiff's alleged physical impairments, as discussed *supra*, the ALJ reasonably interpreted the evidence and found no severe physical impairment. Plaintiff repeats arguments made at step two regarding consideration of the medical evidence and further argues the ALJ erred in failing to consider barriers Plaintiff faced in receiving adequate medical treatment. ECF No. 14 at 17-18. Indeed, disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). However, the ALJ did not find Plaintiff's symptom testimony less persuasive because Plaintiff failed to obtain treatment; the ALJ found the evidence does not support Plaintiff's alleged impairments, which is a permissible consideration. *See Burch*, 400 F.3d at 680. The Plaintiff bears the burden of establishing disability, *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999), and the ALJ reasonably concluded the lack of objective evidence supporting Plaintiff's physical complaints detracts from his credibility.

Second, the ALJ found that although Plaintiff alleged his condition is so severe that it renders him completely unable to work, the record reflects activities that establish greater functioning. Tr. 31. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the

credibility determination.  *See Rollins*, 261 F.3d at 857.  However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits.  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).  Notwithstanding, if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain.  *Fair*, 885 F.2d at 603.

The ALJ noted that Plaintiff reported he is able to prepare simple meals, do household chores like folding laundry and pulling weeds.  Tr. 31, 262.  He supervises and plays with his children.  Tr. 31, 285, 288.  He shops and can travel by walking, driving, or riding in a car.  Tr. 31, 263.  He reported he can pay attention for 30 minutes and follows written instructions well.  Tr. 31, 265.  In September 2013, Dr. Toews noted Plaintiff was fully independent for self-care and has a full range of independent living skills.  Tr. 31, 426.  He was living in his pickup but visited his children daily and took them to the park and played with them.  Tr. 31, 426.  Plaintiff testified that he spends time with his children and nieces and nephews.  Tr. 31, 54-55.  He helps with the household chores and tries to clean up after the children.  Tr. 31, 55.  He watches the children play sports.  Tr. 31, 46-57.  The ALJ found these activities are not consistent with Plaintiff's allegations of debilitating pain, mental health symptoms, and other symptoms.  Tr. 31.

Plaintiff contends the activities cited by the ALJ do not contradict Plaintiff's testimony and do not demonstrate that Plaintiff is able to spend a substantial part of his day engaged in activities that require functions transferable to a work setting. ECF No. 14 at 19-20. Plaintiff cites some qualifications to his capabilities, noting he only plays with his children "for as long as he can" and that despite admitting to no issues with self-care, Dr. Toews noted he was wearing soiled clothing. ECF No. 14 at 19, Tr. Tr. 426. However, "Even where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Here, the ALJ found that Plaintiff has some difficulty functioning as reflected in the RFC, but not to the extent alleged. Tr. 28. The ALJ reasonably considered Plaintiff's activities and this is a clear and convincing reason supported by substantial evidence.

Third, the ALJ found Plaintiff's receipt of unemployment benefits and continued search for work detract from the reliability of his allegations of disabling symptoms and limitations. Tr. 31. Receipt of unemployment benefits may cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014); *Copeland v. Bowen,* 861 F.2d 536, 542 (9th Cir.1988). Notwithstanding, if the record does not establish whether the claimant held himself out as available for full-

time or part-time work, receipt of unemployment benefits may not be inconsistent with disability allegations. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008). Indeed, the ALJ asked Plaintiff about his unemployment claim at the hearing, and Plaintiff acknowledged that he had certified that he was ready, able and willing to work, which the ALJ found is inconsistent with his disability claim of a total inability to work. Tr. 31, 49-50. Plaintiff's testimony that he was "willing to accept anything" suggests he was available for full-time work notwithstanding his simultaneous claim for disability. Tr. 31, 49. The ALJ reasonably found this detracts from the reliability of Plaintiff's symptom testimony. Thus, the ALJ provided clear and convincing reasons supported by substantial evidence for the credibility finding.

**D.     Lay Witness**

Plaintiff contends the ALJ failed to provide adequate reasons for giving little weight to the opinion of Tamera Burton, Plaintiff's mother. ECF No. 14 at 10-12. Ms. Burton completed a "Function Report – Adult – Third Party" form and indicated Plaintiff has become very unreliable, generally ill, and has headaches which make it difficult for him to participate in scheduled activities. Tr. 284. She reported he supervises his children and plays with them. Tr. 285, 288. According to Ms. Burton, Plaintiff's grooming is "less maintained overall" and he needs to use the toilet frequently, although sometimes he is unable to make it in time. Tr.

285.  She indicated he does limited chores because of back pain and dizziness, although he does go shopping.  Tr. 286-87.  Ms. Burton reported Plaintiff is limited in lifting, bending, standing, walking, talking, seeing, memory, completing tasks, concentration, following instructions, and getting along with others.  Tr. 289.

An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled.  *Stout*, 454 F.3d at 1053.  Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ.  If lay testimony is rejected, the ALJ must provide reasons that are germane to each witness.  *Nguyen*, 100 F.3d at 1467.  The ALJ declined to give Ms. Burton's statement great weight for three reasons.  Tr. 32.

First, the ALJ found Ms. Burton's statement is not consistent with the medical record.  Tr. 32.  An ALJ may discount lay testimony if it conflicts with medical evidence.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).  The ALJ reasonably found the record does not support mental health limitations alleged such as the difficulties reported by Ms. Burton regarding memory, completing tasks, concentration, following instructions, and getting along with others.  Tr. 32.  Additionally, the ALJ found the medical record documents minimal objective findings and contains no support for physical limitations, as discussed *supra*.  Tr.

32.  This reason is supported by substantial evidence and is germane to Ms. Burton's statement.

Second, the ALJ found Plaintiff's daily activities are greater than the limitations reported by Ms. Burton would allow.  Tr. 32.  An ALJ may reject lay witness testimony that is inconsistent the claimant's daily activities.  *See Bayliss*, 427 F.3d at 1218.  The ALJ reasonably found that Plaintiff's complaints are inconsistent with some of his daily activities; likewise, this is a germane reason for assigning less weight to Ms. Burton's statement.

Third, the ALJ inferred that Ms. Burton "likely relied heavily on Plaintiff's presentation and subjective reports, which are not fully credible."  Tr. 32.  The ALJ's basis for this statement is not apparent, and to the extent Ms. Burton's statement is based on her own observations, this is an improper consideration.  Nonetheless, the ALJ cited other germane reasons for assigning less than full weight to Ms. Burton's statement, so the error is harmless.  *See Carmickle*, 533 F.3d at 1162-63.

## CONCLUSION

After reviewing the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.  To the extent the evidence could be interpreted more favorably to Plaintiff, the court must uphold the ALJ's decision where the evidence is susceptible to more

than one rational interpretation. *Magallanes*, 881 F.2d at 750. In this case, the ALJ's interpretation of the evidence was reasonable and supported by substantial evidence in the record. Therefore, the ALJ's decision is affirmed.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 18, is GRANTED.

The District Court Executive is directed to file this Order and forward copies to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED March 13, 2018.

<u>s/*Fred Van Sickle*</u>
Fred Van Sickle
Senior United States District Judge